UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | | |
|---|---|---|
| WAYNE S. SMITH, | ) | CIV. 11-4001-KES |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | ORDER GRANTING |
| STATE OF SOUTH DAKOTA; | ) | PRELIMINARY AND |
| JASON GANT in his official | ) | PERMANENT INJUNCTION |
| capacity as Secretary of State of | ) | |
| South Dakota; | ) | |
| CHRIS NELSON in his personal | ) | |
| capacity, former Secretary of | ) | |
| State; | ) | |
| MIKE MILSTEAD in his personal | ) | |
| and official capacity as | ) | |
| Minnehaha County Sheriff, | ) | |
| DEPUTY SHERIFF JEFF | ) | |
| GROMER in his personal and | ) | |
| official capacity, | ) | |
| | ) | |
| Defendants. | ) | |

Plaintiff, Wayne Smith, moves for a preliminary and permanent injunction seeking to enjoin defendants[1] from enforcing the United States

---

[1] Smith's motions for a preliminary and permanent injunction were premised in the original complaint on claims asserted against Chris Nelson and Mike Milstead in their official capacities. Dockets 1, 4, and 8. Smith then filed an amended complaint that asserts a claim against Chris Nelson in his personal and official capacity as Secretary of State of South Dakota, Mike Milstead in his personal and official capacity as Minnehaha County Sheriff, Jeff Gromer in his personal and official capacity as deputy sheriff, and the State of South Dakota. Docket 31. Jason Gant is the current Secretary of State for South Dakota. Gant has therefore been substituted for Nelson in his official capacity as the Secretary of State of South Dakota. See Fed. R. Civ. P. 25(d). Accordingly, the amended complaint asserts claims against the following individuals and entities: (1) the State of South Dakota; (2) Jason Gant in his

citizenship requirement of SDCL 23-7-7.1(8) against him. State of South Dakota, Jason Gant in his official capacity as Secretary of State of South Dakota, and Mike Milstead in his official capacity as Minnehaha County Sheriff (hereinafter collectively referred to as defendants) oppose the motion. Because Smith requested both preliminary and permanent injunctive relief, the court consolidated the injunction issue for trial and held an evidentiary hearing with regard to whether defendants should be preliminarily and permanently enjoined from enforcing SDCL 23-7-7.1(8).

## BACKGROUND

Smith emigrated from the United Kingdom to the United States over 30 years ago when he was 15 years old. He has been a resident of the United States since 1979 and is currently a lawful permanent resident of the United States. Docket 1-1. Smith has previously applied for and obtained a permit to carry a concealed weapon in South Dakota. On July 6, 2010, Smith reapplied

---

official capacity as Secretary of State of South Dakota; (3) Chris Nelson (former Secretary of State) in his personal capacity; (4) Mike Milstead in his personal and official capacity as Minnehaha County Sheriff; and (5) Jeff Gromer in his personal and official capacity as deputy sheriff.

    Mike Milstead, in his official capacity, is properly before the court because he has answered the original complaint against him in his official capacity. Docket 28. The State of South Dakota and Gant, in his official capacity, are also properly before the court because they have answered the amended complaint. A review of the record reveals that Chris Nelson, in his personal capacity, Jeff Gromer, in his personal and official capacity, and Mike Milstead, in his personal capacity, have not been served, and they have not answered the complaint or amended complaint.

in Minnehaha County for a permit to carry a concealed weapon. The Minnehaha County Sheriff's Office denied Smith's application because he was not a United States citizen as required by SDCL 23-7-7.1(8). Docket 1-2.

## DISCUSSION

"The standard for issuing a preliminary or permanent injunction is essentially the same, excepting one key difference. A permanent injunction requires the moving party to show actual success on the merits[.]" *Oglala Sioux Tribe v. C & W Enters., Inc.*, 542 F.3d 224, 229 (8th Cir. 2008) (citations omitted). "If a court finds actual success on the merits, it then considers the following factors in deciding whether to grant a permanent injunction: (1) the threat of irreparable harm to the moving party; (2) the balance of harms with any injury an injunction might inflict on other parties; and (3) the public interest." *Id.* at 229 (citations omitted).

### 1.   Success on the Merits

The statute at issue, SDCL 23-7-7.1, reads as follows:

A temporary permit to carry a concealed pistol shall be issued within five days of application to a person if the applicant:

> (1) Is eighteen years of age or older;
>
> (2) Has never pled guilty to, nolo contendere to, or been convicted of a felony or a crime of violence;
>
> (3) Is not habitually in an intoxicated or drugged condition;
>
> (4) Has no history of violence;

3

> (5) Has not been found in the previous ten years to be a "danger to others" or a "danger to self" as defined in § 27A-1-1 or is not currently adjudged mentally incompetent;
>
> (6) Has physically resided in and is a resident of the county where the application is being made for at least thirty days immediately preceding the date of the application;
>
> (7) Has had no violations of chapter 23-7, 22-14, or 22-42 constituting a felony or misdemeanor in the five years preceding the date of application or is not currently charged under indictment or information for such an offense;
>
> (8) Is a citizen of the United States; and
>
> (9) Is not a fugitive from justice.
>
> A person denied a permit may appeal to the circuit court pursuant to chapter 1-26.

The only portion of the statute that is at issue is subsection (8), which requires the applicant to be "a citizen of the United States."

Smith is asserting a "facial" challenge and an "as applied" challenge.[2] Generally speaking, "a plaintiff can only succeed in a facial challenge by 'establish[ing] that no set of circumstances exists under which the [statute] would be valid[.]' " *See Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 449 (2008) (first alteration in original) (quoting *United States v. Salerno*, 481 U.S. 739, 745 (1987)). *See also Wersal v. Sexton*, 613 F.3d 821, 831 (8th Cir. 2010) ("Indeed, a plaintiff can [generally] only succeed in a facial

---

[2] During the evidentiary hearing, Smith appeared to drop the facial challenge to SDCL 23-7-7.1(8). The court will nonetheless briefly address the issue.

challenge by establish[ing] that no set of circumstances exists under which the [law] would be valid." (alterations in original) (internal quotations and citations omitted)).[3] During the evidentiary hearing, Smith acknowledged that SDCL 23-7-7.1(8) could be constitutionally applied if the applicant were an illegal alien who otherwise satisfied the statute's remaining requirements. *See, e.g., League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523 (6th Cir. 2007); *LeClerc v. Webb*, 419 F.3d 405 (5th Cir. 2005).[4] Thus, the facial attack against SDCL 23-7-7.1(8) fails because Smith has failed to demonstrate "that the law is

---

[3] In *United States v. Stevens*, ___ U.S. ___, 130 S. Ct. 1577 (2010), the Supreme Court acknowledged the existence of a possible alternative standard with regard to a facial attack that might apply in "a typical case." *Id.* at 1587 (recognizing that a plaintiff may be able to establish that the statute is unconstitutional by showing "that the statute lacks any 'plainly legitimate sweep' " (citation omitted)). During the evidentiary hearing, Smith acknowledged that the "no set of circumstances" standard applied in this case.

[4] The decisions in *Bredesen* and *LeClerc* held that both of the challenged laws that discriminated against non-permanent resident aliens, as opposed to permanent residents or illegal aliens, did not violate the Equal Protection Clause because it was rationally related to a legitimate state interest. *Bredesen*, 500 F.3d at 536; *LeClerc*, 419 F.3d at 422. The court relies on these decisions only to support the proposition that when a statute discriminates against illegal aliens, it is presumed to not violate the Equal Protection Clause. The court does not express any opinion with regard to the appropriate standard of review that applies under the Equal Protection Clause when the law discriminates against non-permanent resident aliens. *Compare Bredesen*, 500 F.3d at 536 (applying the rational basis test and upholding law that discriminated against non-permanent resident aliens); *LeClerc*, 419 F.3d at 422 (same) *with Adusumelli v. Steiner*, 2010 WL 3786030, at *11 (S.D.N.Y. Sept. 30, 2010) (rejecting the reasoning in *Bredesen* and *LeClerc* and applying a heightened standard of review with regard to discrimination against non-permanent resident aliens); *Kirk v. N.Y. State Dept. of Educ.*, 562 F. Supp. 2d 405, 411 (W.D.N.Y. 2008) (same).

unconstitutional in all of its applications." *Wash. State Grange*, 552 U.S. at 449 (citation omitted). Therefore, the only remaining issue before the court is whether SDCL 23-7-7.1(8) is constitutional as applied to Smith.

The evidence submitted at the hearing established that Smith has lived in the United States since 1979. He is a lawful permanent resident. Smith was not issued the temporary permit because he failed to satisfy SDCL 23-7-7.1(8).

Generally speaking, states are allowed to enact statutes that discriminate between people based on numerous criteria without violating the Constitution, and such discrimination is reviewed according to the rational basis test. *See, e.g.*, *Mass. Bd. of Ret. v. Murgia*, 427 U.S. 307, 312-17 (1976) (applying the rational basis test in upholding a state law that required police officers to retire at the age of 50). Under the rational basis test, the burden is on the challenger to establish that the state's actions are not rationally related to a legitimate state interest. *See, e.g.*, *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 83-84 (2000) (explaining that states "may discriminate on the basis of age without offending the Fourteenth Amendment if the age classification in question is rationally related to a legitimate state interest" and placing the burden on the "individual challenging the constitutionality" of the discrimination).

When a state discriminates against a suspect class, however, courts review the discrimination according to the "strict scrutiny" test. Under the strict scrutiny test, a state's discrimination can only be allowed to continue if it "advance[s] a compelling state interest by the least restrictive means available."

*Bernal v. Fainter*, 467 U.S. 216, 219 (1984). When applying the strict scrutiny standard, the burden is on the state rather than the challenger. *See Johnson v. California*, 543 U.S. 499, 506 (2005) ("[T]he government has the burden of proving that racial classifications 'are narrowly tailored measures that further compelling governmental interests.' " (citation omitted)).

SDCL 23-7-7.1(8) explicitly discriminates on the basis of alienage because it allows only United States citizens to obtain a temporary permit. Thus, this case does not involve an "equal protection attack" against "facially neutral legislation." *See Washington v. Seattle Sch. Dist. No. 1*, 458 U.S. 457, 484-85 (1982) ("Thus, when facially neutral legislation is subjected to equal protection attack, an inquiry into intent is necessary to determine whether the legislation in some sense was designed to accord disparate treatment on the basis of racial considerations."). Stated differently, SDCL 23-7-7.1(8) is not "facially unrelated" to alienage; the language used explicitly categorizes applicants according to citizenship. *See id.* at 485. And classifications based on alienage are considered "suspect" for purposes of the Equal Protection Clause.[5] *Nyquist v. Mauclet*, 432 U.S. 1, 7 (1977) ("The Court has ruled that classifications by a State that are based on alienage are 'inherently suspect and

---

[5] Defendants have not argued that the "governmental functions" exception applies in this case. *See generally Ambach v. Norwich*, 441 U.S. 68, 74-75 (1979) ("The rule for governmental functions, which is an exception to the general standard applicable to classifications based on alienage, rests on important principles inherent in the Constitution.").

subject to close judicial scrutiny.' " (citations omitted)); *Examining Bd. of Eng'rs, Architects, and Surveyors v. Flores De Otero*, 426 U.S. 572, 601-02 (1976) (applying "strict judicial scrutiny"); *Graham v. Richardson*, 403 U.S. 365, 372 (1971) ("Aliens as a class are a prime example of a 'discrete and insular' minority[.]"). Therefore, because SDCL 23-7-7.1(8) creates a classification based on a suspect class, it must survive intense judicial scrutiny. *See Seattle Sch. Dist. No. 1*, 458 U.S. at 484-85 ("We have not insisted on a particularized inquiry into motivation in all equal protection cases: 'A racial classification, regardless of purported motivation, is presumptively invalid and can be upheld only upon an extraordinary justification.' " (citation omitted)). *See also Graham*, 403 U.S. at 370, 376 (applying strict scrutiny to statute that read as follows: "No person shall be entitled to general assistance who does not meet and maintain the following requirements: 1. Is a citizen of the United States, or has resided in the United States a total of fifteen years").

Defendants argue that the rational basis test is the appropriate standard to apply in this case because SDCL 23-7-7.1(8) is the result of the state exercising its police powers. In support of this argument, defendants rely on a decision by the United States Supreme Court, *Patsone v. Pennsylvania*, 232 U.S. 138 (1914), which relied on the so-called "special public-interest doctrine." *See Graham*, 403 U.S. at 373 n.7. While defendants are correct in noting that *Patsone* has never been officially overruled, subsequent decisions by the United States Supreme Court expressly "cast doubt on the [] validity of the special

8

public-interest doctrine."[6] *Id.* at 373-74 n.7-9 (1971) (citing *Takahashi v. Fish & Game Comm'n*, 334 U.S. 410 (1948)). And the Court in *Graham* effectively rejected the "public interest doctrine" by applying "strict judicial scrutiny" even though the states were regulating the disbursement of its limited resources in the area of "welfare benefits." *See id.* at 372, 376. The court therefore rejects defendants' argument that the exercise of its police powers, as applied to Smith, is subject to rational basis review as opposed to strict scrutiny. *See id.*

Defendants also rely on more recent state supreme court decisions that upheld similar restrictions based on alienage. *See State v. Vlacil*, 645 P.2d 677 (Utah 1982); *State v. Beorchia*, 530 P.2d 813 (Utah 1974); *Ex Parte Rameriz*, 226 P. 914 (Cal. 1924). First, those decisions do not consider the Supreme Court's reasoning and holding in *Graham*. Second, each of those state supreme court decisions relied on United States Supreme Court decisions that were expressly called into doubt by *Graham*. *Compare Vlacil*, 645 P.2d at 680 (citing *Patsone*); *Beorchia*, 530 P.2d at 815 n.1 (citing *Patsone*); *Rameriz*, 226 P. at 920 (citing *Frick v. Webb*, 263 U.S. 326 (1923)); *with Graham*, 403 U.S. at 373-74 n.7 & 9 (identifying *Patsone* and *Frick* as being among those cases that were called into "doubt"). Thus, the court is not persuaded by the reasoning in those state supreme court decisions and will follow the reasoning and apply the strict

---

[6] As noted in *Graham*, "the special public interest doctrine was heavily grounded" on the "rejected . . . concept that constitutional rights turn upon whether a governmental benefit is characterized as a 'right' or as a 'privilege.' " *Id.* at 374 (citations omitted).

scrutiny standard set forth in *Graham*. 403 U.S. at 376 ("[C]lassifications based on alienage, like those based on nationality or race, are inherently suspect and subject to close judicial scrutiny.").

Defendants also argue that it is appropriate to apply the rational basis test because Congress has not preempted SDCL 23-7-7.1(8). To support this claim, defendants rely on *Toll v. Moreno*, 458 U.S. 1 (1982), and 18 U.S.C. § 927, which states that

> No provision of [Chapter 44] shall be construed as indicating an intent on the part of the Congress to occupy the field in which such provision operates to the exclusion of the law of any State on the same subject matter, unless there is a direct and positive conflict between such provision and the law of the State so that the two cannot be reconciled or consistently stand together.

*See generally* 18 U.S.C. § 921-931 (Firearm Owners Protection Act). Defendants assert that because Congress has not preempted states from regulating the issuance of concealed pistol permits, SDCL 23-7-7.1(8) is a "congressionally sanctioned" state regulation that is not preempted by federal law.

The Supreme Court's decision in *Toll* was based on the Supremacy Clause. *Id.* at 17 ("We therefore conclude that insofar as it bars domiciled G-4 aliens (and their dependents) from acquiring in-state status, the University's policy violates the Supremacy Clause."). *Toll* did not discuss whether a state's discrimination against a lawful permanent resident was subjected to rational basis review or strict scrutiny. Nonetheless, the court assumes for purposes of defendants' argument that *Toll* is applicable for purposes of determining the

appropriate standard of review with regard to Smith's Equal Protection Clause claim.

Congress's decision not to occupy the field with regard to the regulation of concealed weapons permits does not mean that Congress has "sanctioned" a state's decision to discriminate on the basis of alienage. Rather, Congress was simply expressing its intent in 18 U.S.C. § 927 not to occupy the field of *firearm regulations*. Defendants have not identified any authority to support the proposition that Congress intended to relinquish its authority over non-United States citizens with regard to an area of law simply because Congress allows states to also regulate that same area of law. Nothing in 18 U.S.C. § 927, or any related provisions, indicates that Congress was relinquishing its authority over lawful permanent aliens. The fact that SDCL 23-7-7.1(8) is not preempted pursuant to the Supremacy Clause does not mean that the United States citizenship requirement at issue in this case is "congressionally sanctioned." The court therefore rejects defendants' argument that SDCL 23-7-7.1(8) is congressionally sanctioned. Accordingly, the strict scrutiny standard, not the rational basis standard, applies with regard to Smith's as applied equal protection claim because the statute classifies on the basis of a suspect class. *See Graham*, 403 U.S. at 372 ("[C]lassifications based on alienage, like those based on nationality or race, are inherently suspect and subject to close judicial scrutiny.").

Defendants argue that the state's interest behind the United States citizenship requirement is the greater level of assurance that a permit will not be issued to a dangerous person or an otherwise impermissible candidate. Assuming that the state's interest behind SDCL 23-7-7.1(8) constitutes a compelling interest, denying Smith a permit simply because he is not a United States citizen is not a narrowly tailored means of achieving that goal. The "possibility that some resident aliens are unsuited" candidates does not "justif[y] . . . a wholesale ban." *Application of Griffiths*, 413 U.S. 717, 725 (1973) (rejecting the argument that "the possibility that some resident aliens are unsuited to the practice of law" could be a "justification for a wholesale ban").

Defendants state that the primary means for ensuring that the applicant is not a dangerous person or an otherwise impermissible candidate is the use of the Interstate Identification Index (Triple I). The evidence submitted at the hearing established that the Triple I covers crimes committed in the United States whether the individual is a United States citizen or a non-United States citizen. The evidence also established that the Triple I does not cover crimes that occur outside the United States whether the individual is a United States citizen or a non-United States citizen. Simply put, the Triple I's effectiveness does not depend on whether the crime is committed by a United States citizen. Smith has lived in the United States since 1979. If he did anything since that

time, a background check with the Triple I would return the same information whether he was a United States citizen or a permanent resident.[7]

Moreover, there is an already established alternative to the blanket prohibition that is a less restrictive and equally effective method of achieving the state's interests in preventing a dangerous or otherwise inappropriate individual from receiving a permit—the Triple I background check. If the Triple I background check is sufficient to achieve the state's interests with regard to United States citizens who may or may not be dangerous or otherwise unsuitable for a permit, then the Triple I background check is also sufficient with regard to Smith in light of his extended residency within the United States. *See id.* at 725 (noting that regardless of an applicant's alienage, there was already a system in place that adequately achieved the state's interests in ensuring "the fitness of an applicant to practice law"). For these reasons, the court finds that SDCL 23-7-7.1(8) is not sufficiently tailored toward achieving its goals.

Defendants have failed to establish that the United States citizenship requirement found in SDCL 23-7-7.1(8) is narrowly tailored towards achieving the state's identified interests. Accordingly, the court finds that Smith has successfully shown that, as applied to him, SDCL 23-7-7.1(8) violates the

---

[7] Indeed, the bottom of Smith's application indicates that a Triple I background check was actually performed by the sheriff. Ex. 4.

Equal Protection Clause. The court must then consider whether a permanent injunction is appropriate.

### 2. Threat of Irreparable Harm to Smith

The violation of a constitutionally protected right constitutes "irreparable harm."[8] *See Kirkeby v. Furness*, 52 F.3d 772, 775 (8th Cir. 1995) (" 'The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.' " (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976))); *McDonell v. Hunter*, 746 F.2d 785, 787 (8th Cir. 1984) ("The violation of privacy in being subjected to the searches and tests in question is an irreparable harm[.]"). Smith has demonstrated that he has been unconstitutionally discriminated against on the basis of his alienage. Thus, the court finds that Smith will suffer irreparable harm if he is not granted injunctive relief. *See Planned Parenthood Minn., N.D., S.D. v. Rounds*, 530 F.3d 724, 732 n.5 (8th Cir. 2008) (en banc) (" 'The basis of injunctive relief in the federal courts has always been irreparable harm and inadequacy of legal

---

[8] Defendants argue that any harm Smith suffers is the result of his choosing not to become a United States citizen. Assuming that Smith could become a United States citizen, the court nonetheless rejects this argument because Smith's decision not to become a United States citizen cannot be used to justify the state's failure to comply with the Equal Protection Clause any more than the plaintiffs' decision to picket within the "restricted picketing zones" could be used to justify the city's failure to comply with the First Amendment. *Kirkeby v. Furness*, 52 F.3d 772, 773-75 (8th Cir. 1995) (finding irreparable harm even though the plaintiffs could picket in areas that were 200 feet away from their targeted location). States must comply with the Constitution regardless of an individual's personal decisions.

remedies.'" (quoting *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 506-07 (1959))).

### 3. Balance of the Harms

Defendants have not demonstrated how they would be harmed by being prohibited from discriminating against Smith on the basis of his alienage. Because Smith is successful in his as applied Equal Protection Clause challenge only, there is no threat of harm that might otherwise be associated with precluding defendants from enforcing SDCL 23-7-7.1(8) regarding Smith's application for a permit to carry a concealed weapon. Thus, any threat of harm to defendants is minimal in comparison to the harm suffered by Smith. The court therefore finds that the balance of the harms weighs in favor of Smith.

### 4. Public Interest

The public has an interest in the constitutional application of statutes. *See G & V Lounge, Inc. v. Mich. Liquor Control Comm'n*, 23 F.3d 1071, 1079 (6th Cir. 1994) (noting that "it is always in the public interest to prevent the violation of a party's constitutional rights" (citing *Gannett Co., Inc. v. DePasquale*, 443 U.S. 368, 383 (1979) (other citation omitted)). The public also has an interest in limiting concealed pistol permits to individuals that comply with the remaining requirements set forth in SDCL 23-7-7.1. As stated above, the basis for any injunctive relief would be premised on Smith's as applied Equal Protection Clause challenge. Enjoining defendants from denying Smith a temporary permit based on his alienage would not interfere with the other

requirements found in the statute or any other statute. The court therefore finds that the public interest weighs in favor of Smith.

## CONCLUSION

Because Smith is successful in his as applied challenge, and after considering all the permanent injunction factors, the court finds that Smith is entitled to injunctive relief. This injunction only pertains to SDCL 23-7-7.1(8) as applied to Smith. Nothing in this order limits or interferes with the remaining requirements found in SDCL 23-7-7.1 or any other statute.

Accordingly, it is

ORDERED that plaintiff's amended motion for preliminary and permanent injunction (Docket 8) is granted, and defendants State of South Dakota, Jason Gant in his official capacity, and Mike Milstead in his official capacity are prohibited from denying Smith a temporary permit under SDCL 23-7-7.1 because of his failure to satisfy SDCL 23-7-7.1(8).

IT IS FURTHER ORDERED that Smith's motion for a temporary restraining order or preliminary injunction (Docket 4) and amended motion for a temporary restraining order (Docket 8) are denied as moot.

Dated February 9, 2011.

BY THE COURT:

/s/ *Karen E. Schreier*
KAREN E. SCHREIER
CHIEF JUDGE