UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | | |
|---|---|---|
| WAYNE S. SMITH, | ) | CIV. 11-4001-KES |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | ORDER |
| STATE OF SOUTH DAKOTA; | ) | |
| JASON GANT in his official | ) | |
| capacity as Secretary of State of | ) | |
| South Dakota; and | ) | |
| MIKE MILSTEAD in his official | ) | |
| capacity as Minnehaha County | ) | |
| Sheriff, | ) | |
| | ) | |
| Defendants. | ) | |

Defendants State of South Dakota and Jason Gant in his official capacity as Secretary of State of South Dakota move under Rule 59(e) to amend the court's order (Docket 40) that enjoined South Dakota, Gant in his official capacity, and Mike Milstead in his official capacity. Defendants also move for judgment on the pleadings and summary judgment. Plaintiff, Wayne Smith, opposes defendants' motions.

**BACKGROUND**

Smith emigrated from the United Kingdom to the United States over 30 years ago when he was 15 years old. He has been a resident of the United States since 1979 and is currently a lawful permanent resident of the United States. Docket 1-1. Smith has previously applied for and obtained a permit to carry a

concealed weapon in South Dakota. On July 6, 2010, Smith reapplied in Minnehaha County for a permit to carry a concealed weapon. The Minnehaha County Sheriff's Office denied Smith's application because he was not a United States citizen as required by SDCL 23-7-7.1(8). Docket 1-2.

On January 3, 2011, Smith initially brought suit against Chris Nelson in his official capacity as Secretary of State of South Dakota and Mike Milstead in his official capacity as Minnehaha County Sheriff. Docket 1. Smith then moved for a preliminary injunction and temporary restraining order. Docket 4; Docket 8. The court denied the motion for temporary restraining order and scheduled an evidentiary hearing to address the merits of Smith's requested injunctive relief. Docket 9. The hearing was scheduled to occur on January 27, 2011. Docket 9.

On January 24, 2011, South Dakota moved for leave to intervene and moved to dismiss the complaint or for summary judgment. Docket 19; Docket 25. Smith did not object to South Dakota's motion for leave to intervene. Docket 26. The court then granted South Dakota's motion for leave to intervene. Docket 27.

On January 26, 2011, the day before the scheduled hearing, Smith filed an amended complaint. Docket 31. The amended complaint identified several new defendants and identified Nelson and Milstead in their personal capacities. Specifically, the amended complaint identified South Dakota, Chris Nelson in his

official and personal capacity as Secretary of State of South Dakota, Mike Milstead in his official and personal capacity as Minnehaha County Sheriff, and Jeff Gromer in his official and personal capacity as deputy sheriff. In addition to a § 1983 claim, the amended complaint also alleged a new claim under the Fourteenth Amendment.[1] Docket 31 at 1.

At the beginning of the January 27, 2011, hearing, several procedural matters were addressed. Docket 43 at 4-6. The court first discussed whether Chris Nelson was the appropriate individual to identify in the amended complaint because he was no longer the Secretary of State. Docket 43 at 4. Defendants' attorney did not object to the substitution of Jason Gant for Chris Nelson.[2] Docket 43 at 5. The attorney for South Dakota and Gant in his official capacity as Secretary of State did object, however, to the filing of the amended complaint without leave of court. Docket 43 at 5. The court overruled the objection because a motion to dismiss under Rule 12(b) had been filed by both

---

[1] On June 13, 2011, this court entered an order dismissing without prejudice Chris Nelson in his personal capacity, Mike Milstead in his personal capacity, and Deputy Sheriff Jeff Gromer in his personal and official capacity. The claims were dismissed pursuant to Fed. R. Civ. P. 4(m) because plaintiff failed to serve the amended summons and complaint on those defendants within 120 days.

[2] There appears to have been some confusion as to whether Jason Gant was substituted for Chris Nelson in both his official capacity and his personal capacity. The court clarified in its order granting Smith's requested injunctive relief that Gant was substituted for Nelson with regard to the claim against Nelson in his official capacity only. Docket 40 at 1-2 n.1.

Nelson and South Dakota. Rule 15 states that "[a] party may amend its pleading once as a matter of course within . . . 21 days after service of a motion under Rule 12(b)[.]" Fed. R. Civ. P. 15(a)(1)(B). *See* Docket 43 at 5-6. Because the amended complaint was filed within 21 days after service of the motion to dismiss, the court found it was proper for Smith to file his amended complaint without leave of court. All the attorneys stated that they wanted to proceed with the hearing even though the amended complaint was filed the day before the hearing and raised several new matters. Docket 43 at 6.

After evidence was received by the court, defendants' attorney asserted arguments that had been raised previously in two separate motions to dismiss.[3] Docket 43 at 49-56. In South Dakota's brief in support of its motion to dismiss, South Dakota argued that "Smith may not bring a § 1983 claim against the State itself as it is not a person subject to suit thereunder." Docket 24 at 3 (citing *Will v. Michigan Department of State Police*, 491 U.S. 58, 70-71 (1989)). And during the hearing, South Dakota's attorney argued that South Dakota could not be a defendant because it is not a person for purposes of the § 1983 claim. Docket 43 at 53. There was no argument in the brief or at the hearing, however, that South Dakota itself could not be enjoined because the Eleventh Amendment prohibits a

---

[3] Defendant Nelson moved to dismiss the original complaint on January 24, 2011. Docket 16. South Dakota also moved to dismiss the original complaint on January 25, 2011. Docket 25. Smith did not respond to either motion because both motions were denied as moot after Smith filed the amended complaint. Docket 36.

federal court from enjoining the state.[4] With regard to the Secretary of State's motion to dismiss, the brief argued that "the Secretary of State has no authority under [the] statute to grant, deny or revoke a concealed pistol permit" and that Nelson had not had the opportunity to act on Smith's application. Docket 17 at 5-6. Thus he could "not be subject to liability under § 1983." Docket 17 at 6. Nelson's counsel relied on this argument throughout the hearing. Docket 43 at 13, 49-50, 54, 74.

On February 10, 2011, the court found that Smith had succeeded in showing that SDCL 23-7-7.1(8), as applied to him, violated his right to equal protection as guaranteed under the Equal Protection Clause of the Fourteenth Amendment. Docket 40 at 13-14. After determining that Smith was entitled to permanent injunctive relief, the court enjoined South Dakota, Gant in his official capacity, and Sheriff Milstead in his official capacity from denying Smith a temporary permit because of his failure to satisfy SDCL 23-7-7.1(8). Docket 40 at 16. In issuing the order, the court did not address whether it was proper to

---

[4] The brief in support of South Dakota's motion to dismiss the original complaint relied on *Will v. Michigan Department of State Police*, 491 U.S. 58 (1989), to support the proposition that "Smith may not bring a § 1983 claim against the State itself as it is not a person subject to suit thereunder." Docket 24 at 3. In *Will* the Supreme Court held "that neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Id.* at 71. The Supreme Court in *Will* also acknowledged, however, that "a state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because 'official-capacity actions for prospective relief are not treated as actions against the State.' " *Id.* at 71 n.10 (citations omitted).

enjoin the Secretary of State or South Dakota itself. On February 15, 2011, defendants filed the present motion to amend the order and for summary judgment. Docket 42.

## ANALYSIS

### I. Motion to Amend the Court's Order Granting Injunctive Relief

Rule 59(e) of the Federal Rules of Civil Procedure was adopted to clarify a district court's power to "rectify its own mistakes in the period immediately following the entry of judgment."[5] *Norman v. Ark. Dep't of Educ.*, 79 F.3d 748, 750 (8th Cir. 1996) (internal quotations and citation omitted). Rule 59(e) provides a deadline for motions to "alter or amend," but it does not specify the standards for alteration or amendment. *See* Fed. R. Civ. P. 59(e). In the Eighth Circuit, a court must find a "manifest error[] of law or fact" in its ruling to alter or amend its judgment under Rule 59(e). *See Hagerman v. Yukon Energy Corp.*, 839 F.2d 407, 414 (8th Cir. 1988) (internal quotation and citations omitted). But Rule 59(e) motions may not be used to "introduce new evidence that could have been adduced during the pendency of the . . . motion[,]" "tender new legal theories for the first time[,]" or "raise arguments which could have been raised prior to the issuance of judgment." *Id.* at 414 (internal quotations and citations omitted). "A district court has broad discretion in determining whether to grant or deny a

---

[5] "A motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment." Fed. R. Civ. P. 59(e).

motion to alter or amend judgment pursuant to Rule 59(e)[.]" *Lowry ex rel. Crow v. Watson Chapel Sch. Dist.*, 540 F.3d 752, 761 (8th Cir. 2008) (internal quotations and citation omitted)).

### A. Injunction Against Gant in His Official Capacity

Gant argues that the court erred by enjoining him from denying Smith's application for a permit to carry a concealed weapon on the basis of SDCL 23-7-7.1(8) because Smith's application or permit was denied before it reached the Secretary of State and, as a result, the Secretary of State was never given the opportunity to act on Smith's application or permit. Prior to the hearing on January 27, 2011, this same argument was made in support of Nelson's motion to dismiss the complaint. Docket 17. After the hearing, the court denied the motion as moot because Smith had filed an amended complaint. Docket 36. The court has not yet directly addressed the issue of whether the injunction could extend to the Secretary of State in light of the circumstances surrounding the denial of Smith's application by Sheriff Milstead. Because Gant and Smith have now had the opportunity to brief this issue, the court will consider whether Gant is properly enjoined in his official capacity. *See Lowry*, 540 F.3d at 761 (recognizing that a "district court has broad discretion" under Rule 59(e)).

Gant argues that the Secretary of State never had the opportunity to act on Smith's application because the application was never received by the Secretary of State. Smith does not dispute that the Secretary of State did not

receive the application. And Smith has provided no evidence that the Secretary of State had anything to do with the denial of Smith's application. In fact, there is evidence that the Secretary of State did not act or make any decisions at all with regard to the denial of Smith's application. Docket 17, Ex. 1. Smith argues, nonetheless, that Gant conceivably could have refused to issue Smith the official permit.

Admittedly, the statute directly at issue in this case, SDCL 23-7-7.1, does not identify who is responsible for handling the application and issuing the temporary permit. But the preceding statute, SDCL 23-7-7, identifies the "sheriff of the county in which the applicant resides" as the individual who is charged with issuing the temporary permit "pursuant to § 23-7-7.1." The Secretary of State's only connection to SDCL 23-7-7 or SDCL 23-7-7.1 is found in SDCL 23-7-8, which states in relevant part that the "application for a permit to carry a concealed pistol shall be filed . . . on a form prescribed by the secretary of state." The Secretary of State must also "issue the official permit" within seven days after receiving the application. *See* SDCL 23-7-8. Nothing in SDCL 23-7-8 gives the Secretary of State the authority to refuse to issue a permit after receiving the application. Moreover, the record demonstrates that the Secretary of State had previously issued an official permit to Smith even though Smith did not satisfy SDCL 23-7-7.1(8). Docket 43 at 10. The statutory scheme and the facts in this

case therefore establish that the Secretary of State could not and would not refuse to issue Smith a permit when given the opportunity to act in this case.

The Secretary of State did not deny Smith's request for an official permit. In the event that Smith's application was sent to the Secretary of State, SDCL 23-7-8 requires the Secretary of State to issue the official permit within seven days. And there is nothing to suggest that the Secretary of State would defy that obligation. Thus, the injunction against Gant in his official capacity as Secretary of State constituted a manifest error of law and fact because the Secretary of State did not deny Smith's application under SDCL 23-7-7.1(8) and because SDCL 23-7-8 does not grant the Secretary of State the discretion to deny the issuance of an official permit after receiving the application.

### B.     Injunction Against South Dakota

After the hearing on the injunction, South Dakota pleaded an Eleventh Amendment immunity defense in its answer to the amended complaint. Docket 37. While South Dakota did not raise this defense prior to or during the injunction hearing, it argues that Eleventh Amendment immunity bars a suit against it that seeks an award of damages and injunctive relief.

"[T]he Eleventh Amendment is regarded . . . as going to subject-matter jurisdiction[,]" which may be "raise[d] . . . at any time." *Fromm v. Comm'n of Veterans Affairs*, 220 F.3d 887, 890 (8th Cir. 2000) (citations omitted); *see also* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-

matter jurisdiction, the court must dismiss the action."). *But see Patsy v. Bd. of Regents of State of Fla.*, 457 U.S. 496, 515 n.19 (1982) ("[B]ecause the State may, under certain circumstances, waive [its Eleventh Amendment defense], we have never held that it is jurisdictional in the sense that it must be raised and decided by this Court on its own motion." (citation omitted)).

When a plaintiff seeks monetary damages from a state or its agencies, there are "only two circumstances" where the Eleventh Amendment does not bar suit. *See Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 670 (1999). "First, Congress may authorize such a suit in the exercise of its power to enforce the Fourteenth Amendment[.]" *Id.* at 670 (citation omitted). "Second, a State may waive its sovereign immunity by consenting to suit." *Id.* (citation omitted).

The first exception, congressional authorization under its Fourteenth Amendment enforcement powers, does not apply in this case because the Supreme Court held in *Will* that Congress did not intend for states, or state officials, to be "persons" for purposes of a § 1983 action. 491 U.S. at 65-71. Therefore, Smith's claim under § 1983 does not bring this case within the first exception to South Dakota's Eleventh Amendment defense.[6]

---

[6] In *Milliken v. Bradley*, 433 U.S. 267 (1977), the Supreme Court acknowledged the existence of a potential alternative exception to the Eleventh Amendment defense: "that the Fourteenth Amendment, ex proprio vigore, works a pro tanto repeal of the Eleventh Amendment." *Id.* at 290 n.23. *See also College Sav. Bank*, 527 U.S. at 670 (recognizing that the Fourteenth

As to the second exception, waiver of sovereign immunity, the record demonstrates that South Dakota has not waived its sovereign immunity. Docket 37 at 4. To the extent that Smith argues that South Dakota could have raised this defense before the court's order granting the permanent injunction, the timing of events as explained above demonstrates that this was not reasonably possible. South Dakota asserted its Eleventh Amendment defense in its answer to the amended complaint within 13 days after becoming a defendant. Docket 37 at 4. Therefore the second exception also does not apply because South Dakota has not waived its sovereign immunity. *See Fromm v. Comm'n of Veterans Affairs*, 220 F.3d 887, 890 (8th Cir. 2000) (holding that the state did not waive its "Eleventh Amendment immunity . . . when the Iowa Attorney General's Office made a general appearance, filed an answer to plaintiff[']s complaint, and responded to discovery"). Because neither exception applies, South Dakota can assert its Eleventh Amendment defense at this time.

While the Eleventh Amendment is not applicable when a plaintiff seeks prospective injunctive relief against **state officers** in their official capacities, *see Ex parte Young*, 209 U.S. 123, 167-68 (1908), the Eleventh Amendment defense does preclude prospective injunctive relief against a **state and its agencies**. *See*

---

Amendment was "enacted after the Eleventh Amendment and [was] specifically designed to alter the federal-state balance"). Smith does not, however, raise this argument, and the court will not address this difficult constitutional issue *sua sponte*.

11

*Alabama v. Pugh*, 438 U.S. 781, 781-82 (1978) (ordering the "dismissal of the State of Alabama and the Alabama Board of Corrections from" a complaint that alleged a § 1983 claim for violations of the Eighth and Fourteenth Amendments because "the issuance of a mandatory injunction . . . is unconstitutional [under] the Eleventh Amendment"). While the explanation and analysis in *Pugh* was brief, the Supreme Court reaffirmed this distinction in *Puerto Rico Aqueduct & Sewer Authority v. Metcalf & Eddy, Inc.*, 506 U.S. 139 (1993), by stating that the *Ex parte Young* exception "has no application in suits against the States and their agencies, which are barred regardless of the relief sought." *Id.* at 146 (citation omitted).

In summary, South Dakota has effectively asserted its Eleventh Amendment defense. And the *Ex parte Young* doctrine does not apply when the injunction is sought against a state itself. The court, therefore, finds that imposition of an injunction against South Dakota constitutes a manifest error of law. Thus, South Dakota's motion to amend the court's order that enjoined South Dakota is granted because the state itself cannot be enjoined when the state has raised an Eleventh Amendment defense.

## II.     Summary Judgment

Defendants also move for summary judgment with regard to the claims asserted against them in the amended complaint. Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and

the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).[7] "A party asserting that a fact cannot be . . . disputed must support the assertion" either by "citing to particular parts of materials in the record," or by "showing that the materials cited do not establish the . . . presence of a genuine dispute[.]" Fed. R. Civ. P. 56(c)(1)(A)-(B). The movant can also establish the absence of a disputed material fact by showing "that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(B). The burden is initially placed on the moving party to establish the absence of a genuine issue of material fact and that the party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) ("[A] party seeking summary judgment always bears the initial responsibility of . . . demonstrat[ing] the absence of a genuine issue of material fact." (internal quotations omitted)).

Once the moving party has met its initial burden, the nonmoving party must establish "that a fact . . . is genuinely disputed" either "by citing to particular parts of materials in the record," or by "showing that the materials cited do not establish the absence . . . of a genuine dispute." Fed. R. Civ. P. 56(c)(1)(A)-(B). For purposes of summary judgment, the facts, and inferences drawn from those facts, are "viewed in the light most favorable to the party

---

[7] Rule 56 was amended April 28, 2010, effective December 1, 2010. The comments to the 2010 amendments make clear, however, that the "standard for granting summary judgment remains unchanged."

opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)).

### A. Gant's Motion for Summary Judgment

Smith cannot recover monetary damages from Gant in his official capacity under § 1983. *Will*, 491 U.S. at 65-71. And as explained above, Smith cannot obtain injunctive relief against Gant because Gant had nothing to do with the denial of Smith's application and could not deny Smith's permit even if the application had been received. Thus, the court grants the motion for summary judgment with regard to the § 1983 claim against Gant. *Cf. Ottman v. City of Independence, Mo.*, 341 F.3d 751, 761 (8th Cir. 2003) ("[A] supervisor incurs liability [in a § 1983 action] for a violation of a federally protected right when the supervisor is personally involved in the violation or when the supervisor's corrective inaction constitutes deliberate indifference toward the violation."); *Skousen v. Brighton High Sch.*, 305 F.3d 520, 529 (6th Cir. 2002) ("Rambo cannot be held liable for malicious prosecution [under § 1983] when he did not make the decision to prosecute Skousen."). Because Gant has only been sued in his official capacity, he is entitled to summary judgment in his favor.

### B. South Dakota's Motion for Summary Judgment

With regard to South Dakota, the court grants the motion for summary judgment as to those claims that seek damages and injunctive relief because South Dakota has successfully asserted an Eleventh Amendment defense.

South Dakota also moves for summary judgment with regard to the issue of whether Smith is entitled to attorney's fees. Under the local rules, attorney's fees may be awarded after a party moves for an award of attorney's fees "no later than 28 calendar days after the entry of judgment absent a showing of good cause." D.S.D. Civ. LR 54.1C. Smith has not moved for an award of attorney fees. Therefore, the court finds that defendants' motion for summary judgment with regard to Smith's potential request for attorney's fees is premature and is denied.

## CONCLUSION

For the reasons expressed above, defendants Gant and South Dakota are no longer enjoined as the court had previously ordered. The injunction against defendant Mike Milstead in his official capacity as Minnehaha County Sheriff, however, is still in effect as set out in the court's February 10, 2011, order. *See* Docket 40. Smith's claim for damages against Milstead has not been resolved. It is

ORDERED that defendants' motion to amend the court's order (Docket 42) is granted with regard to the injunction against Gant in his official capacity and against South Dakota itself.

IT IS FURTHER ORDERED that defendants' motion for summary judgment (Docket 42) is granted with regard to those claims against Gant in his official capacity as Secretary of State of South Dakota.

IT IS FURTHER ORDERED that defendants' motion for summary judgment (Docket 42) is granted in favor of State of South Dakota on all claims against it that seek a monetary damages award and injunctive relief.

IT IS FURTHER ORDERED that defendants' motion for summary judgment (Docket 42) with regard to the request for attorney's fees is denied.

Dated July 19, 2011.

BY THE COURT:

/s/ *Karen E. Schreier*
KAREN E. SCHREIER
CHIEF JUDGE